1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

11

JESSE LOPEZ,

Plaintiff,

Case No. 1:17–cv–01083–SKO

12

v.

13

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

ORDER ON PLAINTIFF'S SOCIAL
SECURITY COMPLAINT

14

15

Defendant.

(Doc. 1)

16

_____/

17

18

## I.  INTRODUCTION

19

On August 11, 2017, Plaintiff Jesse Lopez ("Plaintiff") filed a complaint under 42 U.S.C.

20

§ 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the

21

"Commissioner" or "Defendant") denying his application for Disability Insurance Benefits.

22

(Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted,

23

without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

24

## II.  BACKGROUND

25

On November 25, 2013, Plaintiff filed an application for Disability Insurance Benefits,

26

alleging that he became disabled on January 4, 2013, due to a back injury, sciatica, a protruding

27

disc, arthritis, and limited mobility due to pain.  (Administrative Record ("AR") 155–57, 178.)

28

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 8, 10.)

Plaintiff was born on May 21, 1962, and was 50 years old on the alleged disability onset date. (*See* AR 155.)  Plaintiff did not complete high school, and previously worked as a driver from 1998 to 2000, a truck driver from 2000 to 2006, and a security guard from 2009 to 2013.  (AR 179–80.)

## A.    Relevant Medical Evidence[2]

### 1.    Patrick Rhoades, M.D.

On February 15, 2012, Plaintiff presented to Dr. Rhoades complaining of constant, throbbing back pain on his lumbar-sacral spine that Plaintiff rated as 4/10, as well as stiffness, insomnia, and fatigue.  (AR 232.)  Dr. Rhoades noted Plaintiff tolerated his medication well, and the medications improved Plaintiff's quality of life and "help[ed] with performing activities of daily living."  (AR 232.)  Upon examination, Dr. Rhoades observed Plaintiff to be relaxed with a normal, healthy appearance, but Dr. Rhoades noted tenderness upon palpation of the lumbar spine and thoracic/lumbar muscles.  (AR 234.)  Dr. Rhoades diagnosed Plaintiff with lower back pain and prescribed the narcotic pain killer, Norco.  (AR 234.)

Plaintiff returned to Dr. Rhoades on April 11, 2012, complaining of back pain.  (AR 237.)  Dr. Rhoades noted Plaintiff's pain rating was 4/10 without medication and Plaintiff was "doing okay" working full time.  (AR 237.)   Dr. Rhoades again noted tenderness upon palpation of the lumbar spine and thoracic/lumbar muscles, but also found painful flexion and extension of the lumbar muscles.  (AR 239.)  Dr. Rhoades refilled Plaintiff's prescription for Norco and recommended that Plaintiff continue his current treatment.  (AR 240.)  Plaintiff made similar complaints of back pain and Dr. Rhoades made similar corresponding findings and recommendations when he refilled Plaintiff's prescriptions at his appointments in June, August, and October 2012, as well as January 2013.  (*See* AR 242–43, 245–46, 248–50, 252, 254.)

On March 19, 2013, Plaintiff presented to Dr. Rhoades complaining of back pain as well as pain in his legs.  (AR 256.)  Plaintiff reported that standing or sitting for too long made the pain worse and complained that he had trouble sleeping.  (AR 256.)  Plaintiff rated his pain as

---

[2] As Plaintiff's assertions of error are limited to the ALJ's discrediting of the medical opinion of Patrick Rhoades, M.D., and the ALJ's adverse credibility determination against Plaintiff, only evidence relevant to those arguments is set forth in this Order.

5/10 with medications.  (AR 256.)  Dr. Rhoades refilled Plaintiff's prescription for Norco and added a prescription for Neurontin.  (AR 258.)

On April 16, 2013, Plaintiff presented to Dr. Rhoades complaining of back and leg pain that Plaintiff rated as 8/10 with medications.  (AR 260.)  Plaintiff reported his back had been stiff for nine days and that when he bent down to pick something up, his back "cracked."  (AR 260.)  Plaintiff further reported that he tried Aspercreme, but that did not help with his pain, and his right leg pain had increased since his last visit.  (AR 260.)  Dr. Rhoades continued Plaintiff's prescriptions for Norco and Neurontin and requested an MRI due to Plaintiff's increasing back pain.  (AR 263.)

On May 14, 2013, Dr. Rhoades observed Plaintiff to be "doing better than last month." (AR 264.)  Plaintiff rated his pain as 4/10 with medications.  (AR 264.)  Dr. Rhoades noted that Plaintiff left his job and was helping at a daycare business.  (AR 264.)  Dr. Rhoades continued to note tenderness upon palpation of the lumbar spine and thoracic/lumbar muscles as well painful flexion and extension of the lumbar muscles.  (AR 265.)  Dr. Rhoades refilled Plaintiff's prescriptions for Norco and Neurontin and recommended Plaintiff continue his current treatment plan.  (AR 267–68.)  Plaintiff continued to experience similar signs and symptoms at his appointment on September 16, 2013.  (AR 269–70.)  Dr. Rhoades noted Plaintiff was doing "only minimal paperwork" at the childcare business, but added that Plaintiff had been doing yardwork. (AR 269.)  Dr. Rhoades recommended Plaintiff continue his current medications, which Dr. Rhoades noted were alleviating Plaintiff's pain and helping him perform activities of daily living, but Dr. Rhoades opined that Plaintiff "is unlikely to work again."  (AR 269, 272.)

On January 24, 2014, Plaintiff continued to complain of back and leg pain, and reported hip and knee pain.  (AR 277.)  Dr. Rhoades noted Plaintiff was "relatively stable, but unable to work due to pain."  (AR 279.)  Dr. Rhoades also completed a Physical Residual Functional Capacity Questionnaire in which Dr. Rhoades opined that during an eight-hour day Plaintiff constantly experiences pain severe enough to interfere with his concentration and attention and Plaintiff was incapable of tolerating even low stress work. (AR 287.)  Dr. Rhoades further opined that Plaintiff could not sit or stand for more than thirty minutes at one time, and Plaintiff

could only sit for less than two hours total and stand/walk for less than two hours total, in an eight-hour workday. (AR 288.) According to Dr. Rhoades, Plaintiff needed two to four unscheduled breaks every two hours in an eight-hour workday and Plaintiff could rarely lift and/or carry any amount less than twenty pounds and rarely twist, stoop/bend, crouch, or climb ladders or stairs. (AR 288.)

On March 24, 2014, Plaintiff presented to Dr. Rhoades complaining of lower back pain that extended to the left leg as well as pain in both feet due to diabetic neuropathy. (AR 323.) Plaintiff rated his pain as 7/10 with medications. (AR 323.) Plaintiff also complained of insomnia, fatigue, nausea, muscle weakness, and stiffness. (AR 324.) Dr. Rhoades described Plaintiff as "semi-active" and noted Plaintiff was stable on his medications. (AR 323.) Plaintiff continued to complain of lower back pain as well as insomnia, fatigue, and nausea at his appointment in July 2014.[3] (AR 293.) Dr. Rhoades refilled Plaintiff's Norco prescription and recommended Plaintiff continue with his medication treatment plan. (AR 295.)

On September 10, 2014, Plaintiff continued to complain of lower back pain and reported that he felt unstable when walking. (AR 296.) Dr. Rhoades recommended a straight cane for ambulation and advised Plaintiff to continue taking his medication, which Dr. Rhoades noted was "helping somewhat." (AR 296, 298.) Dr. Rhoades also requested an MRI of Plaintiff's lumbar spine and electrodiagnostic studies of Plaintiff's back and legs. (AR 298.)

On November 13, 2014, Plaintiff continued to complain of lower back pain and reported that it hurt to sit for prolonged periods. (AR 300.) Dr. Rhoades noted Plaintiff's medications continued to help with his pain and "allow[ed] him to do things around the house." (AR 300.) Dr. Rhoades also noted Plaintiff experienced no side effects from the medication, but without his medications, Plaintiff's quality of life would be markedly reduced. (AR 302.) Dr. Rhoades

---

[3] The Court notes page 1 of Dr. Rhoades' treatment notes from this appointment does not appear to be included in the record, but Dr. Rhoades signed the treatment notes in July 2014 suggesting the appointment occurred in July. (AR 295.) The Court further notes Plaintiff's opening brief erroneously indicates this appointment occurred on October 15, 2015, which appears to be an incorrect reference to the date on which these treatment notes were printed. (Doc. 18 at 7 (summarizing AR 293–95); *see also* AR 293–326 (stating on each page that the notes were "generated on 10/15/2015").)

noted similar symptoms and Plaintiff reported similar results from his medication at his appointment on January 12, 2015.  (AR 314, 317.)

On March 9, 2015, Plaintiff continued to complain of lower back pain as well as insomnia, fatigue, and nausea.  (AR 318–19.)  Dr. Rhoades noted that Plaintiff's medications were well tolerated and Plaintiff experienced no side effects.  (AR 318.)  Dr. Rhoades further noted that Plaintiff was active around the house, despite Plaintiff rating his pain as 7/10 with medications.  (AR 318.)  Dr. Rhoades concluded Plaintiff was stable and recommended Plaintiff continue his Norco prescription for his pain.  (AR 320.)

On May 5, 2015, Plaintiff's pain was "much worse" because his medications were being denied.  (AR 322.)  Dr. Rhoades' treatment notes do not explain why Plaintiff's medications were being denied.[4]  (*See* AR 322.)  Plaintiff reported without his medications "he cannot do anything" and "can only minimally walk, stand and sit."  (AR 322.)

On July 14, 2015, Plaintiff presented to Dr. Rhoades with increasing pain due to the continued denial of his medications.  (AR 304.)   Plaintiff rated his pain as 6/10 with medication and reported he was unable to cook, do laundry garden, or shop, but was capable of bathing himself, dressing, managing his medications, driving, and brushing his teeth.  (AR 305.)  Dr. Rhoades noted that Plaintiff's MRI showed mild progression of his degenerative disc disease and prescribed Norco to restore Plaintiff's level of functioning to previous levels.  (AR 304, 307.)

On September 15, 2015, Plaintiff presented to Dr. Rhoades complaining of lower back pain that radiated to his left hip as well as insomnia, fatigue, and nausea.  (AR 309.)  Dr. Rhoades noted Plaintiff's medications were "well tolerated" and Plaintiff experienced no side effects.  (AR 309.)  The treatment notes state that Plaintiff was capable of cooking, doing laundry, gardening, shopping, bathing himself, dressing, managing his medications, driving, and brushing his teeth.  (AR 309.)  Dr. Rhoades recommended Plaintiff continue his current medication regime.  (AR 310.)

---

[4] As Plaintiff notes in his Opening Brief, it appears that the remaining four pages of Dr. Rhoades' treatment notes from this appointment are missing from the record.  (*See* Doc. 18 at 6, fn. 1.)

On November 17, 2015, Dr. Rhoades completed a second Physical Residual Functional Capacity Questionnaire. (AR 328–31.) Dr. Rhoades again opined that during an eight-hour day Plaintiff constantly experiences pain severe enough to interfere with his concentration and attention. (AR. 329.) However, Dr. Rhoades changed his January 2014 opinion regarding how much "work stress" Plaintiff could tolerate from "incapable of even 'low stress' work" (AR 287), to "capable of 'low stress' work." (AR 329.) Dr. Rhoades further opined that Plaintiff could not sit for more than fifteen minutes at one time, or stand for more than five minutes at one time. (AR 329–30.) Dr. Rhoades also again opined that Plaintiff could only sit for less than two hours total and stand/walk for less than two hours total, in an eight-hour workday. (AR 330.) According to Dr. Rhoades, Plaintiff needed four to six unscheduled breaks every two hours in an eight-hour workday and Plaintiff could rarely lift and/or carry any amount less than twenty pounds. (AR 330.) Dr. Rhoades also concluded Plaintiff could never stoop/bend or crouch, but could rarely twist, climb ladders, and climb stairs. (AR 330.)

### 2. State Agency Physicians

On March 10, 2014, Jim Takach, M.D., a Disability Determination Services medical consultant, reviewed the medical evidence of record and concluded Plaintiff could lift or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk six hours in an eight-hour day with normal breaks, and sit six hours in an eight-hour day with normal breaks. (AR 80.) Dr. Takach also concluded Plaintiff had no limitations balancing, kneeling, crawling, or climbing ramps/stairs or ladders, but could only occasionally stoop or crouch. (AR 81.) Upon reconsideration, on June 9, 2014, another Disability Determination Services medical consultant, A. Nasrabadi, M.D., performed an independent review of Plaintiff's medical records and affirmed Dr. Takach's opinion. (AR 91–92.)

### B. Administrative Proceedings

The Commissioner denied Plaintiff's application for Disability Insurance Benefits initially on March 11, 2014, and again on reconsideration on June 9, 2014. (AR 99–101, 103–07.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 109–10.) Plaintiff appeared with counsel at the hearing on December 9, 2015 and testified before

an ALJ as to his alleged disabling conditions.  (AR 24; *see generally* AR 44–72.)

1.      **Plaintiff's Testimony**

Plaintiff testified that he became disabled in January 2013 when "he just felt like he couldn't work anymore" because the "pain was just too much for [him] and [he] felt that [he] was not safe."  (AR 54.)  Specifically, Plaintiff testified that he suffers from disabling back pain, and he is unable to work because his Norco prescription causes him to "feel like [he] just can't be coherent and . . . safe" at work.  (AR 50–51.)    However, Plaintiff also testified that he functions better during the day since he reduced his Norco intake in accordance with his doctor's advice.  (AR 52–53.)  Plaintiff usually takes Norco before bed and in the morning, which allows him to function during the day and helps alleviate his pain.  (AR 53.)  If Plaintiff does not take his Norco in the morning, his pain is a 7/10, but when he takes Norco, his pain is 4/10.  (AR 54.)  According to Plaintiff, he discussed surgery with his doctor, but surgery might not be effective and could make his pain worse.  (AR 55.)  Instead of surgery, his treatment plan is to continue the same medication he is currently taking.  (AR 55.)

Plaintiff testified that he lives with his wife and pet dog, which weighs six to eight pounds.  (AR 48.)  Plaintiff occasionally feeds the dog and picks the dog up off the ground, but does not pick up the dog's waste or take the dog for walks.  (AR 48.)  Plaintiff regularly drives to the store and doctor's appointments, and drove thirty-four miles to testify at the hearing.  (AR 49.)  In the year before the hearing, Plaintiff testified that he personally drove for an hour and forty-five minutes to visit family in Fresno, California, and approximately one year before the hearing, Plaintiff spent eight hours as a passenger in a car driving to Redding, California.  (AR 50.)

On a typical day, Plaintiff wakes up and showers, and "hang[s] out around the house." (AR 55.)  He is capable of independently handling his daily personal care including dressing, showering, brushing his teeth, and putting on socks.  (AR 59.)  His wife usually helps him tie his shoes because it hurts to bend all the way forward to tie his shoes.  (AR 59.)  His wife also makes him breakfast and when he is done, although he brings his plate to the sink, his wife washes the dishes.  (AR 55–56.)  After breakfast, he sits at the kitchen table and reads the newspaper or a magazine for ten to fifteen minutes until he starts to feel pain in his back and his legs get numb.

(AR 56–57.)  When Plaintiff is done reading, he "just basically lounge[s] around."  (AR 56.)  He can sit and watch TV for twenty to thirty minutes, but he switches between sitting on a chair and a sofa to alleviate his pain.  (AR 57–58.)  Around noon, Plaintiff usually has to lay down on the ground for ten to fifteen minutes to stretch out his back because of the pain.  (AR 60.)  He does not use heat, ice, acupuncture, massages, or any other method to treat the pain.  (AR 61.)

Plaintiff testified he is capable of walking for ten to fifteen minutes before he has to stop and sit down for five to ten minutes.  (AR 58.)  He is also capable of lifting ten to fifteen pounds with both hands.  (AR 58–59.)  Stooping, bending forward, and crouching are difficult for Plaintiff because of the pain.  (AR 61.)

### 2.    Vocational Expert's Testimony

A Vocational Expert ("VE") testified at the hearing that Plaintiff has past work experience as (1) a security guard, Dictionary of Operational Titles ("DOT") code 372.667-034, which was light work, with a specific vocational preparation ("SVP") of 3; (2) garbage truck driver, DOT code 905.663-010, which was medium work, with an SVP of 3; (3) sales representative, DOT code 291.357-010, which was light work, with an SVP of 2; and (4) truck driver, DOT 904.383-010, which was medium work (but heavy as performed by Plaintiff), with an SVP of 4.  (AR 63–66.)

The ALJ then asked the VE three hypothetical questions.  First, the ALJ asked the VE to consider a person of Plaintiff's age, education, and work experience, who can stand or walk six hours out of an eight-hour day and sit for six hours out of an eight-hour day, and is limited to lifting and/or carrying twenty pounds occasionally and ten pounds frequently; pushing and/or pulling as much as he can lift and/or carry; and no more than occasional stooping and crouching.  (AR 66.)  The ALJ also asked the VE whether, given this, such a person could perform any of Plaintiff's past work.  (AR 66.)  The VE testified that such a person could only perform Plaintiff's past work as a security guard or sales representative.  (AR 66.)  Additionally, he could perform the following light work: (1) assembler, DOT code 706.684-022, SVP of 2, and (2) mail sorter, DOT code 209.687-026, SVP of 2.  (AR 67.)

The ALJ then asked the VE a second hypothetical question considering the same person

with the same capabilities as outlined in the first hypothetical, but who must alternate between sitting and standing without leaving the work station and will not be off task, and is limited to occasionally kneeling, crawling, balancing, and climbing ramps and stairs, and would never be required to climb ladders, ropes, or scaffolds, or work at unprotected heights or around industrial hazards. (AR 67.)  This individual would also be limited to simple, routine and repetitive tasks; simple work-related decisions; and may have frequent contact with coworkers and the public. (AR 67.)  The VE testified that such a person could not perform any of Plaintiff's previous work, but he could perform the other positions outlined in response to the first hypothetical question. (AR 68.)  The VE also added that such a person could work as an office helper, DOT code 239.567-010, which is light work, with an SVP of 2.  (AR 68.)

The ALJ asked the VE a third hypothetical question considering an individual capable of frequent interactions with the public and coworkers, but limited to sedentary work as defined by the applicable Social Security regulations; lifting and/or carrying ten pounds occasionally and less than ten pounds frequently; standing and/or walking two hours out of an eight-hour day; sitting two hours out of an eight-hour day; and occasionally stooping, crouching, kneeling, crawling, balancing, and climbing ramps and stairs.  (AR 69.)  This individual would never climb ladders, ropes or scaffolds; be exposed to extreme cold; or experience concentrated exposures to hazards such as unprotected heights or moving machinery.  (AR 69.)  The VE testified such an individual could not perform any of Plaintiff's previous work, and there would be no other jobs this individual could perform.  (AR 69–70.)  The VE explained there would be no work because the individual's residual functional capacity limited him to four hours of work a day, which is less than full-time work.  (AR 70.)

Plaintiff's counsel also asked the VE three hypothetical questions.  First, Plaintiff's counsel asked whether the individual in any of the ALJ's hypothetical questions would be able to retain work if the individual would need more than four unscheduled absences a month.  (AR 70.)  The VE responded that such a person would not be able to retain any work.  (AR 70.)

Next, Plaintiff's counsel asked whether an individual who was off-task for 30% of the work day would be able to perform any type of work activity.  (AR 70.)  The VE responded that

such a person would not be able to retain any work. (AR 70.)

Finally, Plaintiff's counsel asked whether the individual described in the ALJ's second hypothetical would still be able to perform the light work identified by the VE if the individual could stand and/or walk for only four hours in an eight-hour workday and sit for only four hours in an eight-hour workday. (AR 71.) The VE responded that such an individual would not be able to perform the light work positions described by the VE in response to the ALJ's second hypothetical. (AR 71–72.)

## C.    The ALJ's Decision

In a decision dated January 20, 2016, the ALJ found that Plaintiff was not disabled. (AR 24–34.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 26–34.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date, January 4, 2013. (AR 26.) At Step Two, the ALJ found that Plaintiff had the severe impairment of degenerative disc disease with lumbar and thoracic radiculitis. (AR 26.) However, at Step Three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). (AR 28.) The ALJ determined that Plaintiff had the residual functional capacity ("RFC")[5]

> to perform less than the full range of light work as defined in 20 CFR 404.1567(b). Specifically, the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; push/pull as much as he can carry/lift; stand and/or walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; must be able to alternate or shift positions at will, including the ability to shift between sitting or standing at will, as needed, and will not need to leave the workstation or be off tasks [sic]; can occasionally stoop, crouch, kneel, crawl, balance, and climb ramps/stairs; can never climb ladders/ropes/scaffolds; cannot work around unprotected heights or hazards; is limited to performing simple, repetitive,

---

[5] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

routine tasks and making simple work related decisions; and can have frequent contact with coworkers and the public.

(AR 28.) Of particular relevance to the claims asserted by Plaintiff in the instant action, the ALJ gave partial weight to Dr. Rhoades' January 24, 2014 opinion because it was inconsistent with Plaintiff's underlying treatment records and with Dr. Rhoades' subsequent opinion on November 17, 2015. (AR 30–31.) The ALJ gave little weight to Dr. Rhoades' November 2015 opinion because it was inconsistent with the underlying treatment records and with the record as a whole. (AR 31.) The ALJ also found Plaintiff's statements concerning his symptoms "not entirely credible" because his testimony was inconsistent with his daily activities and the objective medical evidence, and Plaintiff was able to effectively manage his symptoms through conservative medical treatment. (AR 30, 32.) The ALJ determined that, given his RFC, Plaintiff was unable to perform any past relevant work (Step Four), but that Plaintiff was not disabled because he could perform a significant number of other jobs in the local and national economies, specifically assembler, mail sorter, and office helper (Step Five). (AR 32–33.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on June 7, 2017. (AR 1–7.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. Plaintiff filed a complaint before this Court on August 11, 2017 seeking review of the ALJ's decision. (Doc. 1.)

### III. SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

*Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## IV. APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)–(3).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities. *Id*. § 404.1520(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id*. § 404.1520(d). If not, before considering the Fourth Step, the ALJ must determine the claimant's residual functional capacity, which is the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from the claimant's impairments. *Id*. § 404.1520(e). Next, at Step Four, the

ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. *Id*. § 404.1520(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. § 404.1520(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999); 20 C.F.R. § 404.1520.

## V. DISCUSSION

In his Opening Brief, Plaintiff contends the ALJ erred in two respects: (1) the ALJ failed to articulate sufficient reasons for discrediting Dr. Rhoades' medical opinions; and (2) the ALJ failed to articulate clear and convincing reasons for discrediting Plaintiff's subjective complaints. (*See generally* Doc. 18 at 9–25.) Defendant responds that the ALJ properly weighed the conflicting evidence and medical opinions regarding Plaintiff's physical limitations and provided sufficient reasons for discrediting Plaintiff's subjective complaints. (Doc. 21 at 8–14.)

**A.    The ALJ's Consideration of the Medical Opinions**

**1.    Legal Standard**

The ALJ must consider and evaluate every medical opinion of record. *See* 20 C.F.R. § 404.1527(b) and (c) (applying to claims filed before March 27, 2017); *Mora v. Berryhill*, No. 1:16–cv–01279–SKO, 2018 WL 636923, at *10 (E.D. Cal. Jan. 31, 2018). In doing so, the ALJ "cannot reject [medical] evidence for no reason or the wrong reason." *Mora*, 2018 WL 636923, at *10.

Cases in this circuit distinguish between three types of medical opinions: (1) those given by a physician who treated the claimant (treating physician); (2) those given by a physician who examined but did not treat the claimant (examining physicians); and (3) those given by a physician who neither examined nor treated the claimant (non-examining physicians). *Fatheree v. Colvin*, No. 1:13–cv–01577–SKO, 2015 WL 1201669, at *13 (E.D. Cal. Mar. 16, 2015). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); *see also Orn v.*

*Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (citing 20 C.F.R. § 404.1527)). The opinions of treating physicians "are given greater weight than the opinions of other physicians" because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830–31. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo*, 871 F.3d at 675 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes*, 881 F.2d at 751). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001),[6] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional.

---

[6] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

*Lester*, 81 F.3d at 831.

**2.     The ALJ Stated Sufficient Reasons for Rejecting Dr. Rhoades' Opinions.**

Dr. Rhoades was Plaintiff's treating physician and provided two opinions regarding Plaintiff's ability to work.  (AR 286–89, 328–31.)  First, on January 24, 2014, Dr. Rhoades opined that Plaintiff was incapable of even "low stress work" and could not sit at one time for more than thirty minutes or stand for thirty minutes before needing to sit down or move around (the "January 2014 opinion").  (AR 287–88.)  Dr. Rhoades further opined in January 2014 that Plaintiff could only sit for less than two hours total, and stand/walk for less than two hours total, out of an eight-hour workday.  (AR 288.)

Dr. Rhoades provided a second opinion on November 17, 2015, in which he opined Plaintiff was capable of "low stress work," but Plaintiff could only sit for fifteen minutes at one time and stand for five minutes before needing to sit down or move around (the "November 2015 opinion"). (AR 329–30.)  Plaintiff could rarely lift and/or carry any amount less than twenty pounds and could only sit for less than two hours total out of an eight-hour workday.  (AR 330.)  Dr. Rhoades further opined in that Plaintiff should avoid contact with the public.  (AR 331.)

In discrediting Dr. Rhoades' January 2014 opinion, the ALJ stated:

> Dr. Rhoades' opinion is inconsistent with the underlying treatment records, which indicate that the claimant is much more functional with medications.  Further, Dr. Rhoade's [sic] opinion is inconsistent with his later medical source statement, discussed below, which indicates that the claimant can do low stress work but have no public contact.

(AR 31.)  In discrediting Dr. Rhoades' November 2015 opinion, the ALJ stated:

> Dr. Rhoades' opinion is severely limiting, but is inconsistent with the underlying treatment records and is inconsistent with the record as a whole.  Further, his opinion that the claimant should have no public contact is not supported by any evidence.

(AR 31.)  An ALJ may properly discount a treating physician's opinion that is inconsistent with the physician's treatment notes or the record as a whole.  *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) ("We hold that the ALJ properly found that Dr. Magsarili's extensive conclusions regarding Connett's limitations are not supported by his own treatment notes."); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit treating

physicians' opinions that are conclusory, brief, and unsupported by record as a whole, or by objective medical findings). Although not specifically identified by the ALJ as a basis for their rejection, Dr. Rhoades' opinions are contradicted by the medical opinion evidence of Disability Determination Services non-examining consultants Drs. Takach and Nasrabadi. These two physicians agreed that Plaintiff could (1) lift or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk six hours in an eight-hour day; and (3) sit six hours in an eight-hour day with normal breaks. (AR 80–81, 91–92.) Thus, the ALJ was required to state "specific and legitimate" reasons, supported by substantial evidence, for rejecting Dr. Rhoades' opinions. *Trevizo*, 871 F.3d at 675 (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830.

### a. January 2014 Opinion

The ALJ discredited Dr. Rhoades' January 2014 opinion for two reasons: 1) the opinion was inconsistent with Plaintiff's treatment records, "which indicate that the claimant is much more functional with medications" and 2) the opinion was contradicted by Dr. Rhoades' subsequent opinion in November 2015. (AR 31.) While Plaintiff contends the ALJ's reasons for rejecting Dr. Rhoades' January 2014 opinion do "not achieve the level of specificity required" to reject a treating physician's opinion (Doc. 18 at 13), the Court finds the ALJ's opinion to be sufficiently specific.

The ALJ found Plaintiff's treatment records showed that, contrary to Dr. Rhoades' January 2014 opinion, Plaintiff could adequately function when he took his medication. (AR 31.) The ALJ discussed the treatment notes relevant to this conclusion, with specific citations to portions in the record. For example, the ALJ noted that Dr. Rhoades' treatment notes state that with medication, Plaintiff is able to perform light housework and yard work, and care for himself. (AR 30 (citing AR 304).) The ALJ also cited to nine other instances in the record where Dr. Rhoades noted Plaintiff was tolerating his medications with no side effects or able to perform activities of daily living. (AR 31–32 (citing AR 252, 264, 269, 302, 304, 309, 314, 318, 323).) In one of the treatment notes identified by the ALJ from March 24, 2014, just two months after Dr. Rhoades' January 2014 opinion, Dr. Rhoades described Plaintiff as stable on his medications and "semi-active." (AR 31 (citing AR 323).) In another treatment note identified by the ALJ, Dr. Rhoades

described Plaintiff as "active around the house" on March 8, 2015. (AR 31 (citing AR 318).) Thus, while Dr. Rhoades' January 2014 opinion states Plaintiff was incapable of even low stress work and could only stand/walk for a total of two hours and sit for a total of two hours, in an eight-hour workday, the ALJ identified ample instances in Dr. Rhoades' treatment notes where Plaintiff's level of functioning exceeded those limitations.

Such sharp contradictions between Dr. Rhoades' treatment notes and his January 2014 opinion constitute "specific and legitimate" reasons for discrediting Dr. Rhoades' January 2014 opinion. *Rodriguez v. Berryhill*, No. 1:15–cv–01780–SKO, 2017 WL 896304, at *10 (E.D. Cal. Mar. 7, 2017) (affirming the ALJ's decision where the ALJ found the treating physician's opinion was not supported by the claimant's treatment records because it was "apparent from the records that when the claimant is compliant [with her medication regime], her symptoms are significantly abated," and the ALJ "discussed the objective medical findings relevant to this conclusion"); *see also Connett*, 340 F.3d at 875 (holding that the ALJ provided specific and legitimate reasons for rejecting a treating physician's opinion where the ALJ stated the physician's opinion was "not supported by his own notes" and a review of the treatment notes "provide[d] no basis for the functional restrictions [the treating physician] opined should be imposed" on the claimant) *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("incongruity" between doctor's questionnaire responses and her medical records provided specific and legitimate reason for rejecting doctor's opinion).

Additionally, as an independent ground for discrediting Dr. Rhoades' January 2014 opinion, the ALJ found it was inconsistent with Dr. Rhoades' November 2015 opinion. (AR 31.) "An ALJ may . . . validly reject contradictory medical opinions offered by the same treating physician[.]" *Amant v. Astrue*, No. CIV S-09-0935 DAD, 2011 WL 66469, at *4 (E.D. Cal. Jan. 10, 2011) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995)). Here, the ALJ specifically noted that Dr. Rhoades opined in January 2014 that Plaintiff was incapable of even low stress work, but in November 2015, Dr. Rhoades opined Plaintiff was capable of performing low stress work with no public contact. (AR 31.) Plaintiff contends the ALJ erred because the January 2014 and November 2015 opinions do not conflict "but rather indicate that a limitation

for a low stress job *at minimum* was needed." (Doc. 18 at 15 (emphasis in original).) However, the Court finds the two opinions conflict because one opinion (the November 2015 opinion) states Plaintiff could perform at most a low stress job, while the other opinion (the January 2014 opinion) states at a maximum Plaintiff was incapable of even low stress work. Accordingly, the ALJ properly discredited Dr. Rhoades' January 2014 opinion because it was inconsistent with Dr. Rhoades' November 2015 opinion.

b. <u>November 2015 Opinion</u>

The ALJ discredited Dr. Rhoades' November 2015 opinion for three reasons: 1) the opinion was inconsistent with Plaintiff's treatment records, 2) the opinion was inconsistent with the record as a whole, and 3) the opinion that Plaintiff should have no contact with the public was not supported by any evidence in the record. (AR 31.) Plaintiff again contends the ALJ's reasoning lacks specificity and points to evidence in the record supporting Dr. Rhoades' public contact limitation. (Doc. 18 at 16–17.) Although the Court finds the ALJ erred by ignoring evidence of Plaintiff's limited ability to socialize and relate to his family, the Court finds such error is harmless and the ALJ still provided sufficient reasons for discrediting Dr. Rhoades' November 2015 opinion.

Similar to Dr. Rhoades' January 2014 opinion, the ALJ discredited Dr. Rhoades' November 2015 opinion because it was inconsistent with Plaintiff's underlying treatment records. (AR 31.) Specifically, the ALJ noted that Dr. Rhoades' November 2015 opinion states Plaintiff was capable of only low stress work, could not sit for more than fifteen minutes at one time, and could not stand for more than five minutes before needing to sit down, walk around, or lie down. (AR 31 (citing AR 329–30).) The ALJ also cited to numerous portions of Dr. Rhoades' treatment notes that were inconsistent with Dr. Rhoades' limitations including Dr. Rhoades' January 12, 2015 treatment notes, which note that Plaintiff's medications "help him to do light house work and other things" (AR 31 (citing AR 314)), and Dr. Rhoades' July 14, 2015 treatment notes, which note that Plaintiff was capable of doing light housework and yardwork, and caring for himself (AR 32 (citing AR 304)). (*See also* AR 31–32 (citing AR 252, 264, 269, 302, 309, 318, 323).) Accordingly, like Dr. Rhoades' January 2014 opinion, the inconsistency

between the limitations in Dr. Rhoades' November 2015 opinion (such as only being able to stand for five minutes) and Plaintiff's abilities identified in Dr. Rhoades' treatment notes (such as being able to perform light housework and yardwork) constitute "specific and legitimate" reasons for discrediting Dr. Rhoades' November 2015 opinion. *Rodriguez*, 2017 WL 896304, at *10; *Connett*, 340 F.3d at 875; *Tommasetti*, 533 F.3d at 1041.

The ALJ also discredited Dr. Rhoades' November 2015 opinion because it was inconsistent with the record as a whole. (AR 31.) "An ALJ may properly reject a treating physician's opinion that is inconsistent with the record as a whole." *Chang v. Astrue*, No. 1:11–cv–01572–DLB, 2012 WL 4210299, at *5 (E.D. Cal. Sept. 18, 2012) (citing *Batson*, 359 F.3d at 1195 and *McCoy v. Astrue*, 2009 WL 1657445, *8 (C.D. Cal. Jun.12, 2009)). Plaintiff contends that the ALJ failed to cite specific evidence in the record showing Dr. Rhoades' November 2015 opinion conflicts with the record as a whole. (Doc. 18 at 16.) The Court finds the ALJ cited sufficient evidence in the record that conflicted with Dr. Rhoades' November 2015 opinion. For example, the ALJ noted Dr. Rhoades opined Plaintiff could not sit for more than two hours total in an eight-hour workday. (AR 31 (citing AR 330).) However, the ALJ noted that Plaintiff sat in the car for an eight-hour road trip, which "suggest[s] that he is not as limited as alleged in his application." (AR 32.) Further, the ALJ noted Dr. Rhoades opined that Plaintiff could only "rarely" lift any amount less than twenty pounds (AR 31 (citing AR 330)), but as the ALJ stated in his opinion, Plaintiff testified he could "occasionally" lift his six to eight-pound dog (AR 29 (citing AR 48)). Finally, the ALJ noted Dr. Rhoades opined Plaintiff could sit for no more than fifteen minutes at a time. (AR 31 (citing AR 329).) However, the ALJ also noted that Plaintiff testified he sits and watches TV for twenty to thirty minutes at once, while switching between sitting on a sofa and sitting on a chair to stay comfortable. (AR 29 (citing AR 57–58).) Accordingly, because the ALJ cited to specific portions of the record that were inconsistent with Dr. Rhoades' November 2015 opinion, the ALJ provided sufficient specific and legitimate reasons for discrediting Dr. Rhoades' November 2015 opinion.

Finally, the ALJ also discredited Dr. Rhoades' November 2015 opinion because the ALJ found no evidence in the record supporting Dr. Rhoades' opinion that Plaintiff should have no

public contact. (AR 31.) In response, Plaintiff points to Dr. Rhoades' treatment notes from July 15, 2015, in which Dr. Rhoades noted that without his medication, Plaintiff "is limited in his ability to socialize" or do "things necessary to relate to his family." (Doc. 18 at 17 (citing AR 304).) Defendant counters by offering evidence that Plaintiff's symptoms improved when he was on medication. (Doc. 21 at 10.) While the ALJ made general findings that Plaintiff was more functional on his medication, it appears the ALJ overlooked the portion of Dr. Rhoades' treatment notes identified by Plaintiff because the ALJ concluded there was no evidence in the record supporting Plaintiff's limited ability to interact with the public. (AR 31.) Accordingly, because the ALJ appears to have ignored evidence in the record consistent with Dr. Rhoades' November 2015 opinion, the ALJ erred by discrediting Dr. Rhoades' opinion based on a lack of evidence in the record supporting Dr. Rhoades' limitations. *Fatheree*, 2015 WL 1201669, at *15 (finding that the ALJ's stated rationale for according less weight to a physician's opinion was not a specific and legitimate reason where the ALJ incorrectly asserted that the physician's "opinion . . . was supported by little or no objective evidence"); *cf. Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it is within the power of the Secretary to make findings concerning the credibility of a witness and to weigh conflicting evidence, he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result." (citations omitted)).

Although the ALJ erred by ignoring a portion of Dr. Rhoades' treatment notes, such error is harmless because the inconsistency between Dr. Rhoades' November 2015 opinion and other portions of Dr. Rhoades's treatment notes along with the record as a whole, provide independent bases for discrediting Dr. Rhoades' November 2015 opinion. *Barber v. Astrue*, No. 1:10–cv–01432–AWI–SKO, 2012 WL 458076, at *13 (E.D. Cal. Feb. 10, 2012) (finding harmless error where the ALJ "stated other valid reasons" for rejecting a treating physician's opinion) (citing *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006) and *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005)); *Rodriguez*, 2017 WL 896304, at *11 ("[B]ecause the ALJ articulated another, permissible reason for rejecting Dr. Raypon's assessment of Plaintiff, namely the lack of support in the medical record, this error is harmless." (citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533

F.3d 1155, 1162 (9th Cir. 2008))). Accordingly, because the ALJ provided sufficient specific and legitimate reasons to reject Dr. Rhoades November 2015 opinion, neither reversal nor remand is warranted.

**B.     The ALJ's Consideration of Plaintiff's Credibility**

     **1.     Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, the ALJ must engage in a two-prong analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that his impairment "could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1035–36). Second, if the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection. *Id.*

As to the second prong, "[t]he clear and convincing standard is 'not an easy requirement to meet' and it 'is the most demanding standard required in Social Security cases.'" *Wells v. Comm'r of Soc. Sec.*, No. 1:17–cv–00078–SKO, 2017 WL 3620054, at *6 (E.D. Cal. Aug. 23, 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014)). "General findings are insufficient" to satisfy this standard. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (citation omitted). "[R]ather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see, e.g.*, *Vasquez*, 572 F.3d at 592 ("To support a lack of credibility finding, the ALJ [is] required to 'point to specific facts in the record which demonstrate that [the claimant] is in less pain than [he] claims.'" (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993))); *cf. Burrell*, 775 F.3d at 1138 (stating that the Ninth Circuit's "decisions make clear that [courts] may not take a general finding . . . and comb the administrative record to find specific" support for the finding).

### 2. The ALJ Properly Discounted Plaintiff's Subjective Complaints.

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible for several reasons. Specifically, the ALJ found Plaintiff's testimony was undermined by 1) inconsistencies between his testimony and daily activities, 2) objective medical evidence in the record, and 3) his ability to effectively manage his symptoms using conservative treatment methods, consisting mainly of medications. (AR 30–32.)

#### a. Activities of Daily Living

The ALJ properly considered Plaintiff's activities of daily living in determining that Plaintiff was not entirely credible. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (citations and quotation marks omitted); *see also Burch*, 400 F.3d at 680 (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

At the hearing, Plaintiff testified that he suffers from excruciating back pain that causes him to feel like he cannot be coherent or safe at work due to the medication he takes. (AR 50–51.) He further testified he does not do much around the house in terms of chores and mainly "hang[s] out around the house." (*See* AR 55–56.) However, the ALJ pointed to numerous instances in Dr. Rhoades' treatment notes where Plaintiff had the capacity to do substantially more than merely "hang out around the house." (AR 31–32 (citing AR 252, 264, 269, 302, 304, 309, 314, 318, 323).) For example, on March 8, 2015, Dr. Rhoades described Plaintiff as "active around the house" and tolerating his medications well with no side effects. (AR 31 (citing AR 318).) Dr.

Rhoades previously described Plaintiff as "semi-active" and able to take care of his activities of daily living on March 24, 2014. (AR 31 (citing AR 323).) The ALJ also noted that Dr. Rhoades' treatment notes from July 14, 2015, state that Plaintiff is able to do light house work and yard work and care for himself when he takes his medication. (AR 32 (citing AR 304).) Finally, the ALJ noted that Plaintiff regularly drives his car short distances, including thirty-four miles to be present at the hearing in December 2015. (AR 29, 32.) Thus, the ALJ properly cited to evidence of Plaintiff's daily activities in the record that contradicted Plaintiff's claims of a totally debilitating impairment.

Plaintiff responds to the inconsistency between his testimony and the activities of daily living identified by the ALJ, by arguing that the ALJ's reasoning was not specific enough. According to Plaintiff, the ALJ erred because the ALJ failed to identify a specific household chore that Plaintiff performed and explain how performing that chore undermined Plaintiff's testimony regarding his symptoms. (Doc. 18 at 22.) The Court finds the ALJ's reasoning sufficiently specific. While the ALJ did not identify a specific chore, the Court finds generally being "active," regularly driving short distances, and doing light housework and yardwork, contradicts Plaintiff's testimony that he is only capable of limited chores and "hang[ing] out" around the house. Accordingly, the ALJ did not error by discrediting Plaintiff's testimony based on his activities of daily living. *Wynne v. Colvin*, No. 1:13–cv–961–GSA, 2015 WL 692213, at *4 (E.D. Cal. Feb. 18, 2015) ("[T]he ALJ's reliance on the inconsistency between Plaintiff's complaints and her daily activities counts as a clear and convincing reason, supported by substantial evidence in the record, for rejecting Plaintiff's subjective symptom testimony."); *Craig v. Colvin*, 653 Fed. Appx. 868, 869 (9th Cir. 2016) ("Inconsistencies between the claimant's testimony and . . . his daily activities provide clear and convincing reasons for the ALJ to find the testimony not credible." (citing *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001))).

The record also contains some contrary evidence—such as Plaintiff's ability to help at a family day care center by only doing minimal paperwork and Plaintiff's inability to cook or do laundry—suggesting that Plaintiff's activities are more limited. (AR 269, 305.) However, "credibility determinations are the province of the ALJ" and it is the function of the ALJ to resolve

any ambiguities. *See Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (finding no error with the ALJ's credibility determination even though the ALJ "could easily have relied on other nonmedical evidence in the record to reach the opposite conclusion"); *Rollins*, 261 F.3d at 857 (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one"). The findings were supported by clear and convincing evidence in the record and the Court will not second-guess them. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

### b. Objective Medical Evidence

The ALJ did not err in finding that the objective medical evidence fails to support Plaintiff's subjective complaints. While subjective symptom testimony cannot be rejected solely on the ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining Plaintiff's credibility. *Rollins*, 261 F.3d at 857 (citing 20 C.F.R. § 404.1529(c)(2)); *Burch*, 400 F.3d at 681 ("[L]ack of medical evidence . . . is a factor that the ALJ can consider in his credibility analysis.").

Here, the ALJ discounted Plaintiff's credibility, in part, because Plaintiff's allegations of disabling symptoms were not supported by the clinical evidence. Specifically, the ALJ pointed to Plaintiff's MRI from June 2015, which revealed mild progression of degenerative changes in Plaintiff's lumbar spine. (AR 30 (citing AR 312–13).) The ALJ also noted that Plaintiff's physical examinations have revealed abnormal clinical findings including tenderness of the lumbar spine upon palpation and reduced range of motion of the lumbar spine. (AR 30 (citing AR 254, 257, 261, 265, 270, 274, 278, 294, 298, 301, 306, 320, 325).) After considering this objective medical evidence, the ALJ concluded that the "medical evidence of record does not provide strong support for the claimant's allegations of disabling symptoms and limitations." (AR 30.) Accordingly, the ALJ properly cited to objective medical evidence in the record that suggests Plaintiff's symptoms were not as severe as he alleged.

Plaintiff contends the record shows constant complaints of chronic pain and abnormal clinical findings at every appointment. (Doc. 18 at 20.) The Court first notes Plaintiff's

allegations of constant pain do not constitute objective medical evidence and thus, do not provide a counter to the objective medical evidence relied on by the ALJ. "Objective medical evidence" is "evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." 20 C.F.R. § 404.1529; *see also Attia v. Astrue*, No. 1:06–cv–00778–SMS, 2007 WL 2802006, at *28 (E.D. Cal. Sept. 24, 2007) ("'[O]bjective medical evidence' refers to any evidence that an examining doctor can discover and substantiate; it is not limited to concrete physiological data, but includes all evidence that is amenable to external testing." (citing *Luna v. Bowen*, 834 F.2d 161, 162 (10th Cir. 1987))). Here, Plaintiff's complaints of pain are not "obtained from the application of medically acceptable clinical and laboratory diagnostic techniques." Instead, Plaintiff's complaints are subjective evidence, or "statements by a claimant . . . that are not based on information which an impartial medical expert can evaluate either from examining the claimant himself or herself, or from evaluating the claimant's test results or examination reports." *Attia*, 2007 WL 2802006, at *28. Accordingly, Plaintiff's subjective complaints of pain do not demonstrate that the ALJ's interpretation of the objective medical evidence "does not correlate with the overall treatment records," as Plaintiff contends.

Additionally, with respect to Plaintiff's assertion that the record shows "abnormal clinical findings at every encounter," the Court notes the ALJ expressly took these objective findings into account when the ALJ found that the objective medical evidence did not support Plaintiff's allegations of disabling pain. The ALJ cited to many of the same portions of the record identified by Plaintiff and concluded "the objective medical findings do not support the existence limitations greater than those determined in the residual functional capacity above." (AR 30.) The Court declines to second-guess the ALJ's interpretation of the medical record and Plaintiff has provided no valid reason for the Court to do so. *Quinones v. Astrue*, No. CV 08-7225 AGR, 2009 WL 3122880, at *3 (C.D. Cal. Sept. 25, 2009) ("Even assuming without deciding that the medical evidence could support conflicting inferences, the court must defer to the Commissioner where the evidence is susceptible to more than one rational interpretation." (citing *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995))); *see also Andrews*, 53 F.3d at 1039 ("The ALJ is responsible

for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.").

                      c.   Conservative Medical Treatment

The ALJ's credibility assessment properly relied on evidence showing improvement in Plaintiff's symptoms with conservative medical treatment, mainly consisting of medication.  An ALJ may properly rely on such effective conservative treatment to discredit a claimant's testimony.  *Tommasetti*, 533 F.3d at 1040 (favorable response to conservative treatment undermined claimant's testimony of subjective complaints); *Giordano v. Astrue*, 304 Fed. Appx 507, 509 (9th Cir. 2008) ("It was reasonable for the ALJ to conclude that Giordano's testimony overstated her actual limitations, based on Giordano's . . . effective pain management with relatively conservative treatment."); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling."); *Clemmons v. Astrue*, No. 1:09–cv–0469–SKO, 2010 WL 3715136, at *7 (E.D. Cal. Sept. 16, 2010) ("[T]he ALJ's consideration of Plaintiff's improvement when she took her pain medication as noted by Dr. Evans in February 2005 . . . was a clear and convincing reason to discount Plaintiff's testimony.").

Ample evidence in the record demonstrates that medication effectively controls Plaintiff's symptoms and the ALJ identified the evidence with specific citations to exhibits and pages in record.  Although Plaintiff testified that he suffered from debilitating back pain (AR 50), the ALJ specifically cited to several instances in the record where Dr. Rhoades noted Plaintiff's improved functioning on medications.  (AR 31–32 (citing AR 252, 264, 269, 302, 304, 309, 314, 318, 323).)   For instance, on May 5, 2015, Dr. Rhoades recommended Plaintiff "[c]ontinue medications as he does so much better with them.  Without them his quality of life suffers and his function is markedly reduced."  (AR 302.)  Also, on July 14, 2015, Dr. Rhoades noted that with his medication, Plaintiff "is able to do some light housework and light yardwork and care for himself."  (AR 304.)  Moreover, while Plaintiff testified his medication made him incoherent (AR 51–52), the ALJ specifically cited to several instances in the record where Plaintiff reported no side effects from his medication or Dr. Rhoades noted that Plaintiff was tolerating his

medications well. (AR 32 (citing AR 252, 309, 314, 318).) For example, on January 12, 2015, Dr. Rhoades noted Plaintiff's "[m]edications help him to do some light housework and other things which he could not do without. No aberrant behavior. No side effects. He takes only 30mg Norco per day. He does well without side effects." (AR 314.) Thus, despite Plaintiff's allegations of debilitating back pain and feeling incoherent as a side effect of his medication, the ALJ properly discredited Plaintiff's testimony based on evidence showing Plaintiff's conservative treatment improved his symptoms.

Plaintiff responds to the evidence of improvement identified by the ALJ, by contending 1) "it is not apparent" that Plaintiff's medication can be characterized as "conservative," and 2) that the medication did not effectively manage Plaintiff's back pain because he repeatedly complained that fatigue was a side effect of his medication. In support of his first argument, Plaintiff cites a case from the Eastern District of California, which states that "[i]t is not apparent that the consistent use of narcotic pain medicine can be characterized as 'conservative' treatment," and two cases from outside the Eastern District—neither of which expressly holds prescription pain medication cannot be conservative treatment. (Doc. 18 at 21 (citing *Hidalgo v. Berryhill*, No. 2:15–cv–1342–DB, 2017 WL 931813, at *4 (E.D. Cal. Mar. 9, 2017); *Childress v. Colvin*, Case No. 13–cv–3252 JSC, 2014 WL 4629593, at *12 (N.D. Cal. Sept. 16, 2014); and *Aguilar v. Colvin*, No. CV 13–8307 VBK, 2014 WL 3557308, at *8 (C.D. Cal. July 18, 2014)). Thus, Plaintiff offers no authority holding that Plaintiff's use of Norco to treat his pain precludes the ALJ from finding Plaintiff's treatment is conservative.

To the contrary, a review of cases from the Eastern District demonstrates that prescription pain killers, such as Norco, can be considered a conservative treatment method. *Sutton v. Berryhill*, No. 1:16–cv–01580–SKO, 2018 WL 746406, at *8 (E.D. Cal. Feb. 7, 2018) ("Several courts in this circuit, however, have found that the fact that Plaintiff has been prescribed narcotic medication does not negate the reasonableness of the ALJ's finding that Plaintiff's treatment *as a whole* was conservative, particularly when undertaken in addition to other, less invasive treatment methods." (emphasis in original) (citing cases)); *McDonald v. Berryhill*, No. 1:16–cv–01477–SKO, 2018 WL 1142192, at *17 (E.D. Cal. Mar. 2, 2018) ("Plaintiff's argument that

Vicodin and Lyrica are not conservative prescription treatments is unavailing."); *Jones v. Comm'r of Soc. Sec.*, No. 2:12–cv–01714–KJN, 2014 WL 228590, at *7–10 (E.D. Cal. Jan. 21, 2014) (ALJ properly found that plaintiff's conservative treatment, which included physical therapy, anti-inflammatory and narcotic medications, use of a TENS unit, occasional epidural steroid injections, and massage therapy, diminished plaintiff's credibility); *see also Huizar v. Comm'r*, 428 Fed. Appx. 678, 680 (9th Cir. 2011) (finding that plaintiff responded favorably to conservative treatment, which included "the use of narcotic/opiate pain medications").

Here, Dr. Rhoades prescribed Plaintiff Norco to control his pain. In his treatment notes, Dr. Rhoades described Plaintiff's dosage as "only 30mg per day" and found it to be effective. (AR 314.) Plaintiff's records do not include any more invasive treatment methods such as epidural injections, and Plaintiff does not suggest he used any other more invasive treatment methods to control his pain. (*See generally* Doc 18.) Accordingly, the Court finds the record supports the ALJ's conclusion that Plaintiff's treatment—as a whole—was conservative in nature.

With respect to Plaintiff's second argument, according to Plaintiff, the ALJ erred by finding that Plaintiff's claim of being incoherent on his medication was not supported by the record. (Doc. 18 at 24.) Plaintiff points to several instances in the record where he supposedly complained of fatigue as a side effect of his medication, which Plaintiff contends demonstrates support for Plaintiff's testimony that being incoherent is a side effect of his medication. (Doc. 18 at 24 (citing AR 232, 293, 296–97, 314–15, 324.) The Court finds this argument unavailing.

The Courts notes that not one of Plaintiff's citations to his treatment notes specifically states that fatigue was a side effect of his medication. Rather, these treatment notes indicate that Plaintiff generally complained of being fatigued—not that fatigue was a side effect of his medication. (AR 232, 293, 297, 314, 324.) Moreover, in his treatment notes from three of these five appointments, Dr. Rhoades expressly stated that Plaintiff was tolerating his medications well or experiencing no side effects from his medication. (AR 232, 314, 323.) In contrast, in the two instances cited by the ALJ when Dr. Rhoades did note side effects from Plaintiff's medication, the side effects were nausea, constipation, and gastrointestinal irritation, but never fatigue, and

more importantly, never being incoherent as Plaintiff testified. (AR 32 (citing AR 256, 260).) Accordingly, because Plaintiff does not point to any evidence in the record that supports Plaintiff's testimony that he is incoherent on his medication, the ALJ did not err by finding Plaintiff less credible based on effective, conservative treatment of his back pain using medication. *Clemmons*, 2010 WL 3715136, at *7; *Randolph v. Comm'r of Soc. Sec.*, No. 2:16–cv–01188–CKD, 2017 WL 4038386, at *5 (E.D. Cal. Sept. 13, 2017) ("All of this reportedly effective treatment was fairly conservative in nature, and serves as a valid basis to discount plaintiff's credibility.").

## VI.  CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:   **September 21, 2018**              /s/ *Sheila K. Oberto*

                                   UNITED STATES MAGISTRATE JUDGE